Good morning, Your Honors. Lindsay Craven for Appellant Laurie Adams. I'd like to reserve two minutes for rebuttal. May it please the Court. The issue today is whether the minimal activities of daily living that were identified by the ALJ in the decision demonstrate any inconsistency with the ALJ's decision. The parties do not disagree that the ALJ is only required to offer a germane reason for rejecting the opinion of a non-acceptable source. And the parties do not agree that inconsistent activities of daily living... Let me ask you, how do you define germane reason or how does the case law define germane reason? Well, you know, I was looking into this and I haven't been able to find a clear definition of germane. Well, then what do you think it means? What does our case law say? What I think it is is relevant and appropriate. That's a dictionary definition of germane. Say again? Relevant and appropriate. That's a pretty subjective standard, huh? It is a pretty subjective standard, yes. So we would argue that in order to be germane, to be relevant, the activities identified would have to have some actual inconsistency with the opinion. And there are a couple of cases that this court has recently decided that I included in my 28-J letter submitted yesterday, which would be Popa v. Berryhill and Treviso v. Berryhill. And in both of those cases, there were some minimal activities such as babysitting or going to the grocery store and attending church that were determined to not be inconsistent with the opinions that were offered by the treating sources in those cases. So the court said these limited activities are entirely consistent with the medical opinion in Treviso. Let's see. Treviso, though, dealt with doctors, not... Correct. Correct. ...not other source evidence, right? Yes. Treviso did. Popa was dealing with a nurse practitioner. Yes. Correct. Yes. But the parallel between those being, were the identified activities inconsistent at all, whether that reaches a germane standard or a specific and legitimate standard? So let me ask you this. I thought Danneke, when I read her report and when I read the briefs in this case, I thought Danneke took into account Adams' activities of daily living. Indeed, yes. So what do we take from that? So what we would take from that is Danneke's opinion is, it envisions a person who could be worse. So she notes that Ms. Adams has marked limitations in concentration, persistence, and pace, but she did not check the box that said extreme. So there is some room for growth in her deterioration. So she's not unable to do anything at all. If Ms. Danneke's opinion had said she is unable to interact with any individual ever and unable to engage in any activities out of her room, and the judge was able to point to some activities outside of her room and with other individuals, then that would have been inconsistent. Well, she said she would struggle in work. That was her bottom line. She didn't say during an eight-hour day or during a six-hour day. Or during a four-hour day, just would struggle at work. And the inconsistency was that Ms. Adams was working to support her habit and her gambling habit. So why isn't that an inconsistency? Well, what I would point to is actually in Ms. Danneke's opinion where she checked a bunch of boxes about marked, the question was, would she be able to maintain those activities over a 40-hour work week on an ongoing basis? And that was the question that she was asked, you know, in terms of being able to sustain concentration, to be able to interact with coworkers in the workplace. And she checked a number of boxes. And this is on page 132 of the excerpt of record is where that, those check boxes appear. And so I would argue that the minimal activities that were identified throughout the record are not inconsistent with her opinion that Ms. Adams is not able to maintain a 40-hour work week. So she is able to pick up cans on her own time. What does the record show, like, for example, the whole bit about picking up cans? I mean, does she do that all day? Does she do that some of the hours during the day? I think the record is very... What does the record show? The record shows very little about that. There was testimony at the hearing that Ms. Adams said she picks up cans not every day. She said some days. She says each week she's picking up cans to redeem for nickels. But the record is very limited about how often she was actually doing this. There was another, the other, what was the other activity? Odd jobs. Odd jobs, yeah. And the... What does the record show about odd jobs? It, again, shows very little. Her testimony at the hearing was that she would occasionally do dishes or throw away dishes for one of her neighbors in exchange for either money or marijuana. And that is about all that the record demonstrates in terms of what she was doing. So we would submit that this is a very recent case, is that correct? It is, yes. And it's really not addressed in the briefs? It's not. Do you think POPA changes the way in which we should look at an ALJ's consideration of other source evidence when the ALJ is applying the Germain test? I think that POPA clarifies, but I don't think it actually changes the way in which we should look at an ALJ's consideration of other source evidence. I don't think that changes the standard. I think the standard has been Germain. I think... How does it clarify the way in which that standard should be applied, then? Let me ask you that. I think it clarifies that there has to be some sort of actual inconsistency, that they are going to look at what is in the opinion, what are the activities, are those inconsistent with each other. I think that clarifies it, but I don't think that that changes the standard at all, that there has to be... If you're going to use an inconsistency, there has to be some actual inconsistency. Well, I thought the one of the concerns that the POPA court had was that the ALJ didn't give enough of an explanation when he identified the so-called, when he was dealing with the offered Germain reasons. Right. And he did identify the activities of attending church and shopping. So I think that it was specific enough, but I don't think that there was a specific enough identification of how that was inconsistent. They didn't offer an explanation. Right. Do you think that they did that here? I do not. I think that, I mean, the very limited statement that the ALJ gave was that the opinion was inconsistent with daily activities and gave the example of doing odd jobs. I think we can all agree that giving an example does indicate, including but not limited to, and he did make references to other activities throughout the record, but did not specifically link those to his rejection of Ms. Danicki's opinion. I just have one other question. You know, there's, running through the record, some of the medical reports and at the hearing, there's this whole undercurrent of her use of drugs, marijuana, and other subjects. To what extent is that in play here? I think that it's not in play at all in the rejection of Ms. Adams, or of Ms. Danicki's opinion, because it is not something that the ALJ relied on in a way that the Commissioner has defended. I think that upon remand, because we are just asking that the case be remanded for further proceedings, I think on remand, her substance abuse will be considered in terms of whether she meets the Commissioner's standard of disability, but I don't think it has anything to do with the rejection of Ms. Danicki. I'd like to reserve the remainder of my time. Thank you. Good morning. May it please the Court. Jeff Staples on behalf of the Commissioner. We talked a little bit about the germane standard, and whatever POPA did to clarify that, the germane standard remains the lowest standard that this Court has imposed on an ALJ's reason giving. There's clear and convincing reasons, and then below that, there's specific and legitimate. And finally, the lowest standard is germane. And that applies to the Court's review of the ALJ's reasons, not mine. The ALJ can give any reason. I'm sorry, what's that? The ALJ can give any reason and say, oh, that's a germane reason, and I don't have to consider. Is that what you're saying? If the ALJ doesn't decide whether the reasons are germane, this Court decides whether it's germane. No, the ALJ doesn't. Well, the ALJ is making a determination of how much weight he's going to give to the other source evidence, right? That's right. So he should, generally speaking, fairly consider it, right? That's correct. Along with all the other evidence. Yes, Your Honor. Right? Yes. Unless he's going to discredit it. Well, even to discredit it, the ALJ has to consider the opinion. He has to give a reason. That's right, Your Honor. And doesn't POPA say that he has to explain why he's doing that? The ALJ has to explain why he's giving less weight to another source opinion. And the ALJ did that here. The ALJ gave four reasons to discount Ms. Danicki's opinion. The ALJ extensively explained what the opinion was. It described, marked it. There were four reasons that were given. That's correct, Your Honor. And the district court knocked out three. That's right, but it's... Basically, we're down to the one. Well, Your Honor, it's worth pointing out that this Court's review is de novo. I understand that. The Court's not bound by the district court's reasoning, so... My understanding was the Commissioner didn't seem to be too impressed with the other three reasons. The Commissioner admitted that some of the reasons were not good, but I think it's worth pointing out that the failure to even challenge all of the reasons is problematic. So when the ALJ says something like, Ms. Danicki is not an acceptable medical source, and then the ALJ gives more weight to a doctor who was an acceptable medical source, Dr. Goswell, that under the Commissioner's Social Security ruling 0603P, that's a valid reason to give less weight to an other source over an acceptable medical source. So I'm just pointing out that this Court is not bound by the district court's determination on the validity of the other reasons. So turning, though... The focus, though, seems to be on what the rejection of Danicki's. That's correct, and vis-à-vis the daily activities. And the ALJ gave a few examples of what those were, and they are inconsistent with Ms. Danicki's opinion. Let me ask you, how do we... Danicki did seem to be familiar with her activities of daily living, and she notes that in her assessment of her activities, how does that factor into all of this? So Ms. Danicki says, quote, Ms. Adams is able to do her ADL with little activity. There's no explanation, there's no exploration of what Ms. Danicki has in mind when she's saying that. It could be something as simple as brushing her teeth and eating her meals. So, but when the ALJ goes in and says some other things, like doing odd jobs, for instance, we're talking about, you know, picking up cans, that was a question from earlier, and... Explain to me what's so... why that's so inconsistent. Happily, Your Honor. I don't quite get it, because I read through the record to figure out what she was doing to pick up cans. I mean, you can pick up cans walking down your block, right? And you pick up a few cans. You cannot make... You can go all over the neighborhood. You know, you see my neighborhood, we see these guys with shopping carts. They go house to house to house. They have different bags for different kinds. They have bottles, they have cans, they have other things. Yes, Your Honor, and the record... So we don't have any of that in this record. We don't know anything. That's... Respectfully, I disagree that we don't know anything, Your Honor. We know that she said she picks up, on average, $15 a day in cans, which translates to 300 cans every day. And she said she wasn't doing it every single day, but on an average, that is not just walking down the street and picking up a few cans that you happen to come across. That is a concerted effort over many hours to accomplish that task on a daily basis. So when Ms. Dineke says she can't concentrate, she has difficulty following through with tasks, this kind of activity of picking up 300 cans a day is just not consistent with that. And the ALJ, again, this Court applying the lowest germane standard, the ALJ can certainly weigh those two things against each other and decide to give less weight to Ms. Dineke's opinion. So picking up 300 cans a day means that she's pretty capable? Well, the ALJ didn't find she was capable of just any work. The ALJ found that she could do simple one- to two-step tasks. It's also worth noting that the ALJ found that she could be a recycler. So the ALJ is considering these things, and the ALJ, I think, brought that up at the administrative hearing. Look, this vocational expert said that you could be a recycler. What do you think about that? And, of course, Ms. Adams did not think that she should, but the point is that the ALJ is entitled to draw inferences from the fact that Ms. Adams admitted at the hearing that she was picking up $15 of cans a day in his decision. And so when the ALJ says, no, I give less weight to this opinion that you can't concentrate at all, you lose focus almost immediately, you can't follow through on tasks, I don't agree with that. I think your can picking up and some other odd jobs and other activities shows that you can do at least simple one- to two-step tasks at the lowest reasoning level in the Dictionary of Occupational Titles. So, although the, I agree with you, Your Honor, the record is not as developed as it possibly could be, but it contains enough information, the $15 a day in cans, that is enough information for the ALJ to draw a reasonable inference and provide a reasonable inference. And the ALJ did provide a reason that certainly satisfies the lowest germane standard of reason giving to reject. She turns in the cans, I gather, to get the state reimbursement. Is that what happens? That's correct. Correct, Your Honor. Because the ALJ did provide a germane reason in the form of these facially inconsistent activities with Ms. Dineke's opinion, the ALJ reasonably discounted that opinion and the decision is supported by substantial evidence. Let me ask you this. Do you think POPA changed anything? I would agree with my colleague that it clarified, but the standard remains germane. What it tries to address is how you apply that germane standard. The standard is germane, but how do you apply it? Well, as you were pointing out, the ALJ has to explain something. And so here the ALJ did explain. The ALJ explained that this opinion is inconsistent with the activities. And when the ALJ goes into the substance of that opinion, the ALJ is talking about Ms. Dineke says that Ms. Adams has problems following through with tasks, very poor concentration, market limitations in concentration. And so it's reasonable to contrast those opinions with some of these odd jobs and other activities that show at least somewhat more abilities in terms of concentration and persistence. So whether POPA clarified, elucidated, the ALJ meets that standard. And so because the activities are actually inconsistent, I think that the ALJ meets that standard. I think that was what my colleague was driving at. The activities have to be actually inconsistent under POPA, under any of the other cases when the standard is germane, because the activities here are actually inconsistent. Those activities, that can picking up that she was performing, there's no way to do that in a manner that's consistent with Ms. Dineke's opinion. And because that's the case, the ALJ's decision is supported by substantial evidence. And we would ask the court to affirm the district court's judgment. Thank you. So just to address the can picking up, I disagree that there's no way that she could do that and still be consistent with Ms. Dineke's opinion. Her opinion addresses an ability to maintain work over a 40-hour work week. There is no evidence about what was involved with Ms. Adams picking up her cans. This is not done on a schedule that is imposed by anyone else. This is done on her own time. It's unclear how much she really was doing each day. So I think that that does not create any inconsistency. The other point would be that the ALJ did not root his opinion in her picking up cans. He never mentioned it in his decision. It was not mentioned in the first decision or the second decision. And I think that chainery would really be vital here, including the language that the court cannot be expected to chisel what must be precise from what the agency has left vague. She mentioned it at the hearing. Is that how it all came up? Yeah. She testified about it at the hearing. And the reference to other jobs right at the end of the hearing. Correct. And it looks like my time is up. Thank you, counsel. We appreciate your arguments. Well done.
judges: Paez, Bea, Lamberth